Railroad Commission of Arkansas *v.* Saline River Railway Company.

Opinion delivered June 14, 1915.

1. Railroads—Duty as Public Service Corporation—Acceptance of Charter.—The franchise rights and privileges of a railroad company are granted by the State in consideration of the resulting benefits to the public; and their acceptance by the railroad company imposes upon it the duty of operating the road, when constructed, and of doing so in the manner, and for the purposes contemplated by its charter, which duties it may be compelled to perform by proper proceedings.

2. Railroads—Charter—Operation of Whole Line.—Where a corporation is organized for the purpose of constructing, maintaining and operating a railroad for the conveyance of persons and property, and the charter confers upon the incorporators the power to operate the road over a fixed line or lines, it can not abandon a part of its line and continue, under its charter, to operate the balance.

3. Railroads—Duty to Operate—Loss.—The obligation of a railroad corporation to discharge the duties imposed by its charter, must be construed in connection with the nature and productiveness of the corporate business as a whole, the character of the service required, and the public need for its performance, and its statutory duty to operate its road may be compelled, although as an incident to its so doing, some pecuniary loss may result to it.

4. Railroads—Operation of Trains—Number Daily.—Under Kirby's Digest, § 6704, a railway company operating passenger trains, must run at least one each way, daily.

5. Railroads—Operation of Trains—Loss—Power of Railroad Commission.—A line of railroad nine miles in length, was operated by appellee railway company, primarily for hauling logs for a certain mill; the mill moving away, the railroad could not be operated except at a great loss; *held,* when the company was without money with which to operate the railway, that the railroad commission of the State, was without authority to order that trains be operated on the line daily.

6.  Railroad commission—orders—public interest.—An order made
    by the railroad commission should only be issued in the interest
    of the public.
7.  Railroad commission—reasonableness of orders—jurisdiction of
    courts.—The orders of the railroad commission must be reasonable,
    and whether they are is a question for the courts to decide.
8.  Railroad commission—unreasonable order—remedy—injunction.
    —When the railroad commission exceeds its powers, and issues an
    arbitrary and unreasonable order, an injunction is a proper remedy
    to curb the abuse of power.
9.  Railroads—abandonment of line—consent of state—removing
    track.—Railroad corporations may not abandon their roads and
    surrender their charters, without the consent of the State; and
    although a railroad corporation can not be compelled to operate,
    because such an order would be unreasonable, the corporation is
    not thereby authorized to remove and dispose of ties and dis-
    mantle its road on its own motion.
10. Railroads—iability to operate—remedy—right of state.—When
    a railroad corporation is totally unable to operate, the Attorney
    General, in an action of *quo warranto*, may cause its charter to
    be forfeited because it has abandoned the operation of its road;
    and upon a proper application a court of equity may take charge
    of the affairs and property of the company, by the appointment of
    a receiver.

Appeal from Pulaski Chancery Court; *John E. Mar-tineau*, Chancellor; affirmed.

STATEMENT BY THE COURT.

The Saline River Railway Company instituted this action in the chancery court against the Railroad Commission and the prosecuting attorney of the Tenth Judicial Circuit of this State to restrain them from further proceeding to compel said railway company to operate its line of railroad. The facts are as follows:

The Saline River Railway Company was organized in 1901 and constructed a railroad from Draughon, a station on the Cotton Belt Railroad in Cleveland County, Arkansas, to the town of New Edinburg, a distance of nine miles. The road was completed and put in operation in December, 1901. Later it was extended to Glenn. The road was organized primarily for the purpose of hauling logs to the Saline River Lumber Company, whose plant was located at Draughon. The stockholders of the

company also hoped that by the time all the logs of the lumber company were hauled, the country would be developed to such an extent that there would be sufficient travel and business to justify the continued operation of the road.

The cost of constructing the railroad and its rolling stock and equipment was $75,000.

In the summer of 1913 the Saline River Lumber Company had cut all its timber along the line of the road and began the work of removing its plant from the station of Draughon. Draughon is a town of about 150 inhabitants and it is conceded that there will be only fifteen or twenty persons left after the lumber company's plant has been removed. New Edinburg is a town of about three hundred population and the intervening country between it and Draughon is sparsely settled.

The railroad company operated two trains each way daily upon its line of road from December, 1901, until August, 1913. At that time service from New Edinburg to Glenn was discontinued and the tracks torn up between these two points. The road was continued to be operated between Draughon and New Edinburg until November, 1913, when the train service was discontinued because there was no money with which to operate the road. On December 6, 1913, the Railroad Commission of the State of Arkansas made an order directing the railway company to resume passenger and freight service between Draughon and New Edinburg, and, as above stated, this suit was brought to enjoin the enforcement of that order.

The order provided that the railroad company should operate one train each way daily between Draughon and New Edinburg. The company has no property except its road, track and equipment, which are worth $18,000. The track is now badly out of repair and it would take $5,000 to place it in repair so that trains could be run on it with safety. The actual cost of operating one train each way daily between Draughon and New Edinburg is fifty dollars per day. The total receipts from passenger and freight service amounts to not

more than ten dollars per day. The railroad company since some time in January, 1914, has not operated a train over its line daily but only does so at infrequent intervals to haul freight to the town of New Edinburg, and this, the officers say, is done merely for the accommodation of the inhabitants of that place.

There is some testimony tending to show that the officers of the railroad company contemplate dismantling the road.

The officials have made repeated attempts to sell the road for $18,000, the value of the rails, rolling stock and other equipment of the road.

The chancellor granted the injunction as prayed for and the case is here on appeal.

*Wynne & Harrison,* for appellant.

1. The railway company is a public highway and common carrier. It must serve the public until relieved of its charter obligations by the State through legislative permission. 105 Ark. 314. It must operate its trains whether profitable or not, and run at least one passenger train every day. Kirby's Digest, § 6704; 38 S. W. 54; 91 Ga. 400; 216 U. S. 262; 99 Ark. 17. The order comes clearly within the scope of the powers of the commission.

2. The order of the commission was not arbitrary nor unreasonable. 216 U. S. 262; 29 Pac. 509; 99 Ark. 17.

*S. Brundidge* and *Harry Neelly,* for appellee.

1. The order was unreasonable, arbitrary and confiscatory. 113 Fed. 823. No corporation can be compelled to serve the public without reasonable remuneration. 11 N. E. Rep. 350; 36 Pac. 755; Morawetz on Priv. Corp., § 1119.

2. The company is insolvent, and to grant the contention of appellant would be confiscation of appellee's property. 169 U. S. 544; 125 *Id.* 650; 128 *Id.* 174; 173 *Id.* 688; 164 *Id.* 578; 134 *Id.* 418.

Hart, J., (after stating the facts). (1) The franchise rights and privileges of a railroad company are granted by the State in consideration of the resulting

benefits to the public and their acceptance by the railroad company imposed upon it the duty of operating the road, when constructed, and of doing so in the manner and for the purposes contemplated by its charter, which duties it may be compelled to perform by mandamus or other proper proceedings. 33 Cyc. 635; see also cases cited in case notes to 33 Am. & Eng. Ann. Cas., p. 1256, and 50 L. R. A. (N. S.) 652.

In *Atlantic Coast Line* v. *North Carolina Corporation Commission,* 206 U. S. 1, the court said:

"The elementary proposition that railroads from the public nature of the business by them carried on and the interest which the public have in their operation are subject, as to their State business, to State regulation, which may be exerted either directly by the legislative authority or by administrative bodies endowed with power to that end, is not and could not be successfully questioned in view of the long line of authorities sustaining that doctrine."

Amendment No. 4 to our Constitution conferred upon the Legislature the right to create a railroad commission, and pursuant to that authority an act was passed creating such a commission and defining the duties thereof.

Section 6704 of Kirby's Digest provides that it shall be the duty of every company operating a railroad in the State which runs passenger trains to run at least one of its passenger trains each way daily.

(2-3) The plaintiff corporation was organized for the purpose of constructing, maintaining and operating a railroad for the conveyance of persons and property. The franchise of the railroad company can only be exercised by the corporation operating its whole line of road. The charter confers upon the incorporators the power to operate the road over a fixed line or lines and it can not abandon a part of its line and continue to operate the balance under its charter. Its obligation to discharge the duties imposed by its charter must be construed in connection with the nature and productiveness of the cor-

porate business as a whole, the character of the service required and the public need for its performance. For that reason its statutory duty to operate its road may be compelled, although by doing so, as an incident, some pecuniary loss may result from rendering such service. *Missouri Pacific Ry. Co.* v. *Kansas,* 216 U. S. 262.

(4)    As we have already seen, our statute requires the railroad company to operate trains each way over its line daily and penalties are provided for failure or refusal to obey that section of the act, or proper orders of the railroad commission. This brings us to the question of whether or not the order made by the railroad commission was so arbitrary or unreasonable as to be void for want of power to make it. *St. Louis, I. M. & S. Rd. Co.* v. *Bellamy,* 113 Ark. 384; *St. Louis, I. M. & S. Rd. Co.* v. *State,* 112 Ark. 147; *La. & Ark. Rd. Co.* v. *State,* 85 Ark. 12.

The fact, as above indicated, that the order made by the Railroad Commission was likely to cause pecuniary loss to the railroad company was not of itself sufficient to make the order arbitrary and unreasonable; but this fact was a circumstance to be considered in determining whether or not the order was arbitrary and unreasonable.

(5)    In the case at bar the uncontroverted facts show that the cost of the construction and equipment of the railroad was $75,000 and that it now owns no property except its tracks and rolling stock; that the track is badly out of repair and that it would cost $5,000 to repair it so that passenger trains could be safely run over it; that the road now owes between $100,000 and $150,000; that it has made repeated efforts to sell its franchise and all its property for the sum of $18,000, which is the actual value of its rails and rolling stock; and that it has been unable to find a purchaser; that the actual cost of operating one train each way daily between Draughon and New Edinburg is fifty dollars and that the greatest amount of revenue which it can earn daily is not more than ten dollars.

The railroad company operated its trains from August, 1913, to some time in November of that year at this loss. This was at a season of the year when traffic over railroads in this State is usually heaviest. So, under the peculiar facts of this case, the track of the railroad is so short, and the business done by it so small that it would be unreasonable to require it to operate a train for freight and passengers. If the business done over the whole line of the road shows that to compel the operation of trains would be to entail a serious and continued loss, it would be unreasonable to prescribe and demand it, and it would not be required.

The record shows that the railroad company has no means whatever with which to operate its line of road and is unable to procure any for that purpose. It can not even sell its road for the cost of its rails and rolling stock. The record does not show that this lack of means resulted from any mismanagement of the railroad.

(6) An order made by the Railroad Commission should only be issued in the interest of the public. Under the undisputed facts there is no probability that the railroad can be operated and the Railroad Commission should not make a vain and futile order. Such action on its part is arbitrary and unreasonable. See *State of Kansas* v. *Dodge City, Montezuma & Trinidad Ry. Co.* (Kan.), 24 L. R. A. 564; *State of South Carolina* v. *Jack, Cir. Ct. of Appeals,* 4th Circuit, 145 Fed. 281; *Ohio, etc., Ry. Co.* v. *People, on Relation of Attorney General* (Illinois), 11 N. E. 347; Elliott on Railroads 2d ed., vol. 2, Sec. 1056c.

(7-8) Granting the commission power to make orders does not necessarily take away the jurisdiction of the courts. As we have already seen, the orders of the Railroad Commission must be reasonable, and whether or not they are is a question for the courts to decide. The rule is that where a tribunal, such as a board of railway commissioners, exceeds its powers and issues an arbitrary and unreasonable order, an injunction is a proper remedy to curb the abuse of power. The only difficulty

in practically applying the rule is in determining whether the commission has exceeded its powers.    Elliott on Railroads, 2d ed., vol 2, Sec. 705-6.

(9)    There is some testimony in the record tending to show that the officers of the railway company contemplate dismantling it.    It does not follow that because we have held that the order of the Railroad Commission was arbitrary and oppressive, that the railroad company has a right to take up its rails and dispose of them on its own motion.    In the case of *Freeo Valley Railroad Co.* v. *Hodges,* 105 Ark. 314, we held that since railroads are constructed for public use and the public has rights in them which should be protected, that railroad corporations are not authorized to abandon their roads and surrender their charters without the consent of the State.

(10)    Under the facts disclosed in this case, the Attorney General in an action of *quo warranto* might cause the charter of the company to be forfeited because the railroad company has abandoned the operation of its road.    So, too, upon proper application a court of equity could take charge of the affairs and property of the railroad company by the appointment of a receiver.    Thus, the court would be able to protect the rights of creditors and stockholders and to insure, as far as practicable, the discharge of the public function of the corporation.    See Elliott on Railroads, 2d ed., vol. 1, sec 539.

From the views we have expressed it follows that the decree will be affirmed.

KIRBY, J., dissents.