No. 21,394.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, v. THE MAYOR AND COMMISSIONERS OF THE CITY OF LAWRENCE, etc., *Defendants*.

### SYLLABUS BY THE COURT.

TITLE OF ACT—*Authorizing Issue of Bonds for Extension of Water-works—Authorizes Extension to After-acquired Waterworks System.* A title to an act which describes it as authorizing cities of a certain class "now" owning a system of waterworks to issue bonds for their extension is broad enough to cover a provision for the issuance of such bonds by cities which owned no waterworks at the time of the enactment, but which acquired them thereafter.

Original proceeding in mandamus. Opinion filed June 9, 1917. Writ allowed.

*S. D. Bishop*, and *J. H. Mitchell*, both of Lawrence, for the plaintiff.

*Thomas Harley*, of Lawrence, for the defendants.

The opinion of the court was delivered by

MASON, J.: This is an original proceeding brought in the name of the state to require the commissioners of Lawrence to issue bonds for the extension of waterworks owned by the city. The refusal of the defendants is based upon a doubt respecting the validity of the statute which purports to authorize such action.

The act in question was enacted in 1913. It undertakes to confer power to issue bonds for the purpose indicated upon "cities of the second and third class, whose total indebtedness shall not exceed 15 per cent of its total assessed valuation now owning and operating, or hereafter acquiring a system of waterworks." (Laws 1913, ch. 121, § 1; Gen. Stat. 1915, § 855.) The city of Lawrence did not own a system of waterworks when this law took effect, but it has since acquired one. It is a city of the second class, and its indebtedness is within the prescribed limit. It is therefore covered by the terms of the act. But the contention is made that the words "or hereafter acquiring," in the portion of the statute above quoted,

15—101 Kan.

are without effect because they are not within the scope of the title, which reads:

"AN ACT authorizing cities of the second and third class whose total indebtedness shall not exceed 15% of its total assessed valuation now owning and operating a system of waterworks to issue bonds for the purpose of enlarging, repairing, extending and improving such system." (Gen. Stat. 1915, § 855.)

The word "now" as used in a statute ordinarily refers to the date of its taking effect. (*Clark v. Lord,* 20 Kan. 390, 396.) Construed strictly and literally, the title therefore applies only to cities which at the time the act was published owned a system of waterworks, and not to those which might thereafter acquire one. The word "now," however, is sometimes used, not with reference to the moment of speaking, but to "a time contemporaneous with something done." (21 A. & E. Encycl. of L. 676; 29 Cyc. 1140.) "The intent with which this word is used must be gathered from its peculiar significance in each case." (Note to last text cited.) It may mean "at the time spoken of or referred to" as well as "at the time of speaking." One of the examples of this given in the Oxford English Dictionary is: "What season more important than the hour of death? Everything *now* conspires to fill the soul with gloom." The expression is somewhat rhetorical, corresponding to the "historical present" of the grammarians, but it could leave no one in doubt that the speaker referred to the time of death and not to the time of utterance. That this use of the term is not confined to poetical discourse is illustrated by this sentence from a scientific paper in a recent review: "Curiously enough, in the early stages of this firm condition the ice is perhaps more dangerous to venture upon than when it has the 'rubbery' structure; for it is *now* brittle, and yet not of sufficient thickness to support a considerable weight at one point." (The Natural History of Ice, *Harper's Magazine,* March, 1917, p. 559.)

It is entirely clear that the draftsman of the statute under consideration, when in the title he referred to the issuance of bonds for the extension of waterworks by cities which "now" owned them, had in mind cities which owned them at the time of the proposed extension, and not those which happened to own them at the time the act took effect. His idea manifestly was that a city which owned waterworks should, for that rea-

The State, *ex rel.*, v. City of Lawrence.

son, be given the power to use its credit for their repair and improvement. If he had substituted "already" for "now," where it occurs in the title, the literal meaning would have been much the same, yet in that case probably it would not have been suggested that it was the condition at the time of the publication of the act that was to control. We think the intention to make the application of the statute depend on the conditions at the time it should be invoked is reasonably clear from the language employed. We are required to give the title any reasonable construction that will carry out the expressed purpose of the legislature, and we think, as has been said of another statute, the one under consideration "is not unconstitutional or void, or at least it is not so clearly unconstitutional and void that we can declare it to be so." (*The State, ex rel., v. Comm'rs of Haskell Co.,* 40 Kan. 65, 68.) If the title, in describing the cities to be affected, instead of saying "whose total indebtedness *shall* not exceed 15 per cent" had said "whose total indebtedness *does* not exceed 15 per cent," it would have referred literally to the percentage of indebtedness existing at the time of the enactment. But in that case no one would have doubted that the subject of the act was the granting of power to issue bonds to cities having less than 15 per cent of indebtedness at the time of the proposed issuance. Moreover, if the statute is to be construed as giving power to issue the bonds which it describes to the cities which at that particular time owned a system of waterworks, while denying the power to all other cities, even although they might afterwards meet the same requirements, its validity is at least open to a very serious doubt on the ground that it would then confer corporate power by an act which would be special because it related to certain designated cities, the number of which could not be increased or diminished, thereby transgressing the constitutional rule in that regard. (Const., art. 12, § 1; *City of Topeka v. Gillett,* 32 Kan. 431, 4 Pac. 800.) "A statute . . . which confers corporate power upon an unchangeably fixed number of corporations is usually regarded as special, and therefore unconstitutional." (*Bull v. Kelley,* 83 Kan. 597, 602, 112 Pac. 133.)

Upon these grounds we hold that the statute is valid and that it is the duty of the defendants to issue the bonds in question.

Judgment is therefore rendered for the plaintiff.