ARKANSAS UTILITIES COMPANY *v.* CITY OF PARAGOULD.

4-5923                                   143 S. W. 2d 11

Opinion delivered June 17, 1940.

*Kirsch & Cathey,* for appellant.

*Bratton & Coleman,* for appellee.

*Charles Frierson, Jr., amicus curiae.*

McHANEY, J. Appellant is a public utility corporation, engaged in the light and power business both within and without the city of Paragould. Appellees are the city of Paragould, hereinafter called the City, its mayor, aldermen and the manager of its municipal light and power plant. The City became the owner and operator of an electric light and power plant within the city in January, 1939. Appellant serves, among other areas outside the city limits, what is known as the Center Hill community, holding a certificate of convenience and necessity from the State Department of Public Utilities authorizing it so to do.

In June, 1939, the City sought, by intervention in a proceeding before said State Department involving the servicing of various rural territories in the vicinity of the city, permission or authority to engage in the light and power business outside its corporate limits and within a radius of three miles, particularly in the Center Hill community. After a hearing before the Department, the application of the City was denied. No further action was taken by the City and no petition to review the order, as provided by § 2097 of Pope's Digest was filed. Thereafter, despite the order of the Department, the City began the construction of a line and distribution system to Center Hill community to compete with appellant there, or

was about to do so, when this action was brought by appellant to enjoin it from so doing. Appellees demurred to the complaint seeking an injunctive order, which was sustained. Appellant declined to plead further and its complaint was dismissed.

The question presented by this appeal is one of law, and that is whether the City, under the facts stated, may, without the approval of the Department of Public Utilities, construct, operate and maintain an electric distribution system outside the city limits and furnish current for lights and power to customers in a community outside the city already served by a private utility operating under a permit from said Department. We think it may not do so, and that the question is controlled by statute.

Section 2108 of Pope's Digest, same being § 45 of act 324 of 1935, which is the only statute, dealing with the question, provides: "Municipalities now owning or operating facilities for supplying a public service or commodity to its citizens may, with the approval of the department granted after hearing, extend its service into the rural territory contiguous to such municipality and put into effect such reasonable rules and rates for such rural service as may be from time to time approved by the Department."

This statute seems to fit the City's case exactly and conditions its right to extend its service beyond the corporate limits and into rural territory to the approval of the Department. But, it is insisted by the City that the word "now," as used in the above quoted statute, limits its application to municipalities then "owning or operating facilities for supplying a public service to its citizens," that is, at the time of the effective date of said Act, which was April 2, 1935, and that it has no application in this case, as the city did not own or operate such facilities until January, 1939. We cannot agree that such is the effect of the word "now" in said statute. It appears clear that the legislature meant "now or hereafter owning or operating," etc. Why should this section apply only to those municipalities

that owned and operated such facilities on April 2, 1935, and not to those that subsequently acquired such facilities? Such a classification might be unconstitutional as being arbitrary and unreasonable. Many municipalities may have subsequently acquired such facilities. When and if they did, said statute would apply, as they "now" own or operate such facilities, that is, at the time of acquisition. We, therefore, conclude that the word "now" in said statute not only does not prevent its prospective operation but requires it. For a discussion of the use of the word "now," as used in the title to a Kansas statute, see *State of Kansas, ex rel.* v. *Mayor, et al., of City of Lawrence,* 101 Kans. 225, 165 Pac. 826.

We cannot agree with the suggestion of learned counsel for appellees that said statute, so construed, is unconstitutional. Amendment No. 13 to the Constitution permits cities of the first and second class to issue bonds "in sums and for the purposes (approved by a majority of the voters) at such election . . . for the purchase, development and improvement of public parks and flying fields located either within or without the corporate limits of such municipality, . . . and for the purpose of purchasing, extending, improving, enlarging, building or construction of water works or light plants, and distributing systems thereof."

There is nothing in this amendment that authorizes a municipality to construct an electric distribution system outside the municipality. That right is dependent upon the statute and, but for the statute in question, a municipality would have no right to construct and operate such a system outside the city limits, even with the consent of the Department. The powers of municipalities are limited to those expressly granted either by constitution or statute and those necessarily implied as incident to the express powers given. In *Cumnock* v. *City of Little Rock,* 154 Ark. 471, 243 S. W. 57, 25 A. L. R. 608, in defining municipal powers, this court said: "On the same point in Dillon on Municipal Corporations, (5th ed.), vol. 1, par. 237 (89), it is said: 'It is a general and undisputed proposition of law that a municipal corpora-

tion possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient, but indispensable. *Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.'*

"The principle laid down above is one of universal application throughout the United States and has been recognized and applied by this court in several cases according to the particular facts of each case."

We know of no other statute, and the diligence of counsel has disclosed no other, giving municipalities the express power to extend their electric facilities to rural communities, outside the city limits, and we can see no reason to imply such power as an incident to operations within, especially where such rural communities are already being served. We can see many reasons *contra*. For instance, if it should be held that such extension rendered the municipal plant a public utility as to its operations outside, it would of necessity assume all the burdens and liabilities of a public utility, such as taxation, continuity of service, liability for tort actions, and the like.

It is argued that the city has a surplus of electrical energy over its needs and that it ought to have the right to dispose of such surplus. It may do so in either the method provided by statute, or by delivering it to a purchaser at the corporate limits without regard to said statute. But when it seeks to engage in the utility business outside its corporate limits, it must get the consent of the Department as provided by statute. It evidently thought so too at the time it applied for a permit to serve the Center Hill community.

The decree will, therefore, be reversed and the cause remanded with directions to overrule the demurrer and for further proceedings according to law, the principles of equity and not inconsistent with this opinion.