YANCEY *v.* CITY OF SEARCY.

4-8631                                    212 S. W. 2d 546

Opinion delivered June 21, 1948.

Rehearing denied July 5, 1948.

*Harry Neelly,* for appellant.

*Yingling & Yingling,* for appellee.

ED. F. McFADDIN, Justice. Searcy is a city of the second class; and this is a suit brought by a citizen and taxpayer against the city and its officials to test the legality of certain purchases and plans contemplated by the city. The appellant, as plaintiff below, claimed that the city proposed to act *ultra vires;* the appellees (defendants below) in their answer detailed exactly how and why the city was about to proceed. The appellant's demurrer to the answer was overruled. Thereupon the appellant refused to plead further; and the chancery court dismissed the complaint for want of equity. On this appeal the issue is, whether the allegations of the complaint, as amplified and explained by the answer, show that the city is about to engage in an *ultra vires* undertaking.

The complaint alleged, *inter alia*: ''The inhabitants of said city (Searcy) are supplied with water by the White County Water Company, a Delaware corporation, duly licensed to do business in the State of Arkansas, which owns and operates a pumping and filtering plant and reservoir on Little Red River. After pumping the water into the settling basins and treating it, the company distributes the water through a large single main which supplies not only the City of Searcy, Arkansas, but also the municipalities of Judsonia and Bald Knob, the service main running through Judsonia to reach Bald Knob. The company also owns and operates the waterworks system at Beebe, but this has an independent source of supply, derived from wells in the vicinity, and there is no physical connection between the Beebe waterworks system and the rest of the White County Water Company's properties.

''The City of Searcy is proposing to buy the entire plant of the White County Water Company, which will include all of its pumping station, reservoirs, settling tanks, and filtering and treating plant on the Little Red River, the supply main from there not only to the City of Searcy but on through Searcy to Judsonia and Bald

Knob, the distribution systems in the three cities, and their franchises and licenses, as well as the entire waterworks system serving the incorporated town of Beebe; . . . that this action will have the City of Searcy, Arkansas, engaged in business as a public utility, since it will be selling water to three other communities; that this is *ultra vires* and will involve the city in the hazards of a commercial enterprise, subjecting it to the losses and expenses incident to the operation and maintenance of public utility systems.''

The answer alleged, *inter alia*: ''Defendants admit that they have negotiated a contract with the White County Water Company for the purchase of all of its properties, which will include the source of supply and distribution of water, the other physical assets of said company, and the franchises for supplying water to the residents of Searcy, Beebe, Judsonia and Bald Knob, for the reason that the City of Searcy is in urgent need of additional facilities both for supply and for a distribution system to serve sections of the City that have been recently improved, creating a greatly increased demand for water, and is in need of additional water pressure for the protection of the life and health of its citizens and has been notified by the Arkansas Inspection and Rating Bureau that if these improvements are not made, the classification of Searcy will be reduced from the 7th class to the 8th class, with the result that its insurance rates will be substantially increased . . . ; that the company refuses to sell the Searcy plant as a separate unit from its entire system for the reason that the Searcy distribution system is the profitable part of the company's entire operation and if it were to be taken by the City under right of eminent domain it would so damage and impair the value of the rest of the property that the severance damages added to actual value would make the cost substantially greater than the actual value of the Searcy water properties, and that therefore it is cheaper for the City to acquire the entire property of the company than to acquire only that part thereof which serves the City of Searcy; that the City would either have to acquire and pay for the company's present pumping sta-

tion, settling basins, filter tanks and water mains, or it would have to build new ones to serve its own needs; that present day costs would make this an extravagant undertaking; that if the City did not do this it would be a consumer of the White County Water Company and would not be able to secure the additional water supply and to make the extensions and improvements which it urgently needs.

* * * * *

" . . . the estimated cost of the needed improvements is $225,000, which the city can secure from the sale of the three municipal properties which it does not need, and if necessary it can issue some ad valorem bonds under the authority of Amendment No. 13. . . .

"The city can buy the entire property of the White County Water Company for $358,390, from which the company will pay all of its debts so that the city will have clear title to the properties; the city has a firm offer for a series of revenue bonds to be issued under the provisions of Act No. 131 of 1933 and the amendments thereto, in an amount sufficient to pay for the entire properties, and it can use the money to be received from the sale of the Beebe, Judsonia and Bald Knob properties for extensions and improvements to the Searcy system. The bonds will be revenue bonds and cannot possibly be a charge upon the property of the plaintiff and will not increase his taxes, since the cost of the project will be paid entirely by the users of water. . . .

"The system is now the only available source of supply of water to Judsonia and Bald Knob, and for that reason, if the defendant city acquires the entire property, it will be necessary for it to continue to supply water to Judsonia and Bald Knob until such time as it can sell these two systems, but it is not the intention of the city to engage in the business of a public utility; and it has found buyers for the distribution system at Bald Knob, the distribution system at Judsonia, and the entire system at Beebe, and these transfers can be made shortly after the defendant acquires the property, so that it will

then own only the necessary source of supply, treatment and filter plants, and the transmission lines. The cities of Judsonia and Bald Knob are not financially able to pay for the water main which extends from the corporate limits of Searcy and runs through Judsonia on to Bald Knob, but they have sufficient water revenues respectively to enable each to sell a series of water revenue bonds to pay for its distribution system, and the City of Searcy can, over a reasonable period of years, amortize the cost of the supply main from Searcy to these cities through the water rates to be charged to them.

"The money which the city will receive from the sale of the Beebe, Judsonia and Bald Knob properties will be used by the city to carry out the entire program for improvement of supply and distribution and extension of the mains of the service in Searcy, in order to afford better protection for the property and the lives of the inhabitants of Searcy and to meet the requirements of the Arkansas Inspection and Rating Bureau."

We have copied rather extensively from the pleadings so that the full picture will be visible in its correct proportions. As we see it, Searcy proposes to buy the White County Water Company for $358,390 and issue revenue bonds therefor. But the White County Water Company is a public utility serving not only the individual water users in Searcy, but also the individual water users in Bald Knob, Judsonia and Beebe, each of which is a separate municipality, and each located several miles distant from, and not contiguous to, the City of Searcy. Searcy would continue serving these individual users until Searcy sells the distribution systems in the three other cities; and then Searcy would continue to sell water to the distributors of water in Bald Knob and Judsonia. Searcy intends to sell the distributing systems in Bald Knob, Judsonia and Beebe, but until these sales are accomplished, Searcy would continue to serve the individual consumers in those other cities. It is inescapably true that Searcy would be a public utility, distributing water to inhabitants of Bald Knob, Judsonia and Beebe instantly this proposed purchase was accomplished.

Does the law permit a municipality to do this? That is the question.

We have adopted and reiterated the statement by Dillon on the power of a municipal corporation: ''It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers and no others*: First, those granted in *express words*; second, those *necessarily or fairly implied in* or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.'' [1]

All parties herein agree that there are four Arkansas cases that bear on the question at issue; and each side cites each of these cases as authority for its position. We will briefly review these cases, and indicate which side they support.

1. In *McGehee* v. *Williams,* 191 Ark. 643, 87 S. W. 2d 46, we held that the City of Fort Smith could sell surplus water to the City of Alma. That case affords no support to Searcy, for two reasons: (a) The case holds that the water may be sold to a city; but Searcy is proposing—for the time being, at least—to sell to individual water users in other cities, each several miles removed from Searcy. (b) There is now no surplus water in Searcy. In fact, the entire reason, for what Searcy is undertaking, is to obtain more water for Searcy. So all the cases and rules about ''surplus water'' are entirely beside the point as regards Searcy's position in the case at bar.

2. In *North Little Rock Water Co.* v. *Waterworks Commission of Little Rock,* 199 Ark. 773, 136 S. W. 2d 194, the City of Little Rock purchased the properties of

---

[1] See Dillon on Municipal Corporations, 5th Ed., Vol. I, § 237 (89). We quoted the foregoing in *Cumnock* v. *City of Little Rock,* 154 Ark. 471, 243 S. W. 57, 25 A. L. R. 608, and in *Ark. Util. Co.* v. *City of Paragould,* 200 Ark. 1051, 143 S. W. 2d 11.

the Arkansas Water Company within the City of Little Rock. The plant was within the city limits of Little Rock, and supplied the individual water users in North Little Rock (a separate municipality). As a part of the purchase agreement with the Arkansas Water Company, Little Rock agreed to furnish water to the company, so that the company would continue to serve the individual water users in North Little Rock. We held: (a) that Little Rock was obligated to furnish such water to the company, saying: " . . . when a public service corporation sells and transfers its property serving a certain community, the transferee succeeds to the obligations of the transferor serving the community; and this rule applies when a municipality, with power to do so, purchases a distribution system serving a certain community, the purchasing municipality would be compelled to continue the service"; and (b) that the proposed sale of water was not *ultra vires*, since Little Rock was selling the water to the company at the city boundaries of Little Rock, and since the proposed plan had been approved by the Department of Public Utilities.

There are several reasons why this cited case does not support Searcy; we list only one: in the case at bar Searcy does not propose to limit its activities to the sale of water at its city boundaries; rather, it proposes—indeed, it would be obligated—to go into the other cities and sell to individual consumers. Such procedure can find no support in the case of *North Little Rock Water Co. v. Waterworks Commission of Little Rock, supra.*

3. In *Arkansas Utilities Co. v. City of Paragould,* 200 Ark. 1051, 143 S. W. 2d 11, the City of Paragould proposed to serve a nearby community with electric power; but Paragould did not obtain a permit from the Department of Public Utilities as was (and is) required by § 2108, Pope's Digest, (being § 45 of Act 324 of 1935). In holding that such permission from the Department of Public Utilities was mandatory, we said: "We know of no other statute, and the diligence of counsel has disclosed no other, giving municipalities the express power to extend their electric facilities to rural communities,

outside the city limits, and we can see no reason to imply such power as an incident to operations within, especially where such rural communities are already being served. We can see many reasons *contra*. For instance, if it should be held that such extension rendered the municipal plant a public utility as to its operations outside, it would of necessity assume all the burdens and liabilities of a public utility, such as taxation, continuity of service, liability for tort actions, and the like.

"It is argued that the city has a surplus of electrical energy over its needs and that it ought to have the right to dispose of such surplus. It may do so in either the method provided by statute, or by delivering it to a purchaser at the corporate limits without regard to said statute. But when it seeks to engage in the utility business outside its corporate limits, it must get the consent of the Department as provided by statute."

The above quotation is apropos here; and Searcy's possible liability in tort actions, by individual water users in Bald Knob, Judsonia and Beebe, can well explain why the appellant has full justification for this litigation. Certainly, the cited case affords Searcy no support. In fact, the cited case clearly supports the appellant.

4. In *Mathers* v. *Moss*, 202 Ark. 554, 151 S. W. 2d 660, the City of Dumas (owning its waterworks system) proposed to issue $9,000 of revenue bonds in order to extend its water facilities one and two-tenths miles beyond the city limits to a National Youth Administration Residency. It was insisted that this extension would be a profitable venture. In holding that Dumas could not legally do what it contemplated, we said:

"  .  .  .  to so hold would be to go a step further than we have yet gone, and if it were so held there would appear to be no restraint upon municipalities engaging generally in utility services not restricted to their own inhabitants.

"Here, it is to be remembered that it is proposed to extend water mains one and two-tenths miles beyond the city limits, not to obtain a water supply for the inhab-

itants of the city, but to sell water to the residency; nor is this a case where the city is proposing to sell a surplus above its own needs; nor is it a case of the city going beyond its own borders to obtain an outlet for sewage disposal. It is the case of a city going beyond its own limits to furnish water and sewage facilities to another community—the residency—because it was found and declared in the ordinance that the city would profit by doing so. . . .

"We are constrained, therefore, to hold that the city proposes to confer and supervise powers not authorized by law, and the decree will, therefore, be reversed, and the cause remanded with directions to sustain the demurrer to the answer."

This cited and quoted case is decidedly adverse to the position of Searcy, and affords much support to the appellant.

So much for the Arkansas cases cited by the parties. We find it unnecessary to discuss cases from other jurisdictions. The only Arkansas statute cited by Searcy as permitting a municipal corporation to do what is here contemplated is § 10001, Pope's Digest, which may also be found in II Ark. Stats. (1947), § 19-4202. This statute is § 1 of Act 135 of 1939, and is a substantial reënactment of § 1 of Act 96 of 1935. The germane portion reads: "A municipality constructing such waterworks system or integral part thereof may sell the water to private consumers located inside and outside of said municipality. It may sell a part of said water to an improvement district, or it may sell said water or a part thereof to a private corporation engaged in the business of selling water to private consumers in said municipality."

This statute was in effect and was cited by section number in Mathers v. Moss, supra;[2] and the holding in that case necessarily limits the sale of water outside the municipality to (a) surplus water; or (b) water sold after compliance with § 2108, Pope's Digest. Neither

---

[2] A study of the transcript in that case discloses that ordinance 120 of the City of Dumas was enacted January 15, 1941.

situation exists in the case at bar; so we hold that § 10001, Pope's Digest, affords Searcy no support.

In short, if Searcy were to do what its answer contemplates, then Searcy would be going into the business of buying, operating and selling waterworks systems in three other municipalities; and Searcy would be using (a) its tax-exemption status, (b) its revenue bond issuing power, and (c) its ad valorem tax power, to finance and carry on the operations in the other three municipalities. This State has given a municipal corporation no such power. What the City of Searcy proposes to undertake is *ultra vires,* and the chancery court erred in failing to so hold.

Before concluding, we mention two other matters:

1. Searcy uses the plea of expediency as its defense —that is, Searcy says it will lose a classification rating made by the Arkansas Inspection and Rating Bureau if Searcy fails to get better water protection. We point out that the Department of Public Utilities has the power to act on Searcy's complaint in such a case under § 2082, Pope's Digest.

2. An apparent defect in Searcy's case is the absence of allegations (a) that the Department of Public Utilities has agreed that the White County Water Company can sell its plant, as required by § 2117, Pope's Digest; and (b) that Searcy has the consent of the Department of Public Utilities to serve consumers outside its city limits (as is required by § 2108, Pope's Digest). But, since we have already arrived at a result adverse to Searcy, and since these points are not discussed in the briefs, we forego further comment about them, except to say that we consider them germane.

Conclusion: The decree of the chancery court is reversed, and the cause remanded with directions to grant the appellant the permanent injunction as prayed.