CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.*

WHEDBEE.

Opinion delivered January 20, 1913.

1.  INTERSTATE COMMERCE—EFFECT OF MISTAKE AS TO RATE.—Where a railway agent, in an interstate shipment, makes a mistake in the application of established rates to the classification prescribed in the schedules, and charges the shipper less than he should charge, the railway company is not bound by the mistake, and the carrier can recover the deficiency from the shipper.  (Page 240.)

2.  INTERSTATE COMMERCE—NOTICE OF SHIPPERS AS TO TARIFFS.—While it is the duty of carriers to furnish correct information as to the proper application of the lawfully established rates, still the law requires that tariffs shall be open to public inspection, and shippers are charged with notice of the rate lawfully applicable.  (Page 240.)

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon*, Judge; reversed.

*Thos. S. Buzbee* and *George B. Pugh*, for appellant.

A shipper is not entitled to order a car and use the whole of it for a small shipment for his exclusive benefit and then pay the less than carload rate when it amounts to less than the carload rate would have amounted to,

neither can he load a car with goods which, under the tariffs, can not be mixed in a car and pay the carload rate on one commodity, even though he pays on the commodity taking the highest rate. 9 I. C. C. Rep. 602.

A mistake of the agent or agents of the railway companies would not relieve the companies of the duty to collect the freight due according to the tariffs. 27 Ark. Law Rep. 126, and cases cited.

*John W. Goolsby,* for appellees.

McCulloch, C. J. Appellees shipped a carload of freight, consisting of an engine and boiler, a sawmill outfit, corn grist rocks, shaftings and pulleys, and a lot of household and kitchen furniture, from Oliver Springs, Tennessee, to Mansfield, Arkansas, over the line of the Southern Railway Company as initial carrier and appellant, the Chicago, Rock Island & Pacific Railway Company, as connecting or delivering carrier. Appellees' agent prepaid to the initial carrier at the point of shipment the sum of $116, which sum was represented by said agent of the initial carrier to be the correct amount of charges for the consignment according to established rates. When the shipment reached the point of destination, appellant's agent discovered that the amount of freight, as prepaid, was not correct according to established rates approved by the Interstate Commerce Commission, and demanded payment of an additional sum, which appellees refused to pay, and they instituted an action of replevin to recover from appellant the possession of the property, which was being held for the additional freight and demurrage charges. Appellees made affidavit and bond for delivery of the property, and the same was by the officer taken from appellant's possession and delivered to them.

The cause was tried before the court sitting as a jury, and the court found in favor of appellees for recovery of the property.

According to the undisputed testimony adduced at the trial the amount of freight charges was, through mistake, misrepresented by the agent of the initial carrier,

and according to the established rates approved by the Interstate Commerce Commission the amount should have been that which is now claimed by appellant. The mistake of the agent of the initial carrier occurred by reason of an incorrect combination of different classes of freight in the same carload rate, thereby allowing the total amount of the freight per cwt. to be included in one classification, and the single carload rate thereon being given.

The trial court, as the basis of its judgment, declared the law to be that "while the shipper must take knowledge of the tariff rates, that he is not compelled to take knowledge of the facts as to what articles can be or can not be combined and shipped in one car at carload rates; and whether or not the goods mentioned in the testimony in this case can be shipped, that the shipper, the plaintiff in this case, is not responsible and can not be charged with the knowledge of the fact that they can not be combined and shipped in one car at carload rates, even if the law be that they can not be so combined." In other words, the controversy in this case grows out of the misapplication of established rates to the classification prescribed in the schedule, and the court held that the shipper was not bound to take notice of the different classification and was not at fault, and therefore could not be compelled to pay the additional amount over and above the gross charges proposed by the initial carrier.

In the recent case of *St. Louis, I. M. & S. Ry. Co.* v. *Wolf,* 100 Ark. 22, we held (quoting from the syllabus) that "where a railway agent by mistake inserted in a bill of lading for an interstate shipment a rate less than the published rate, the railroad company is not bound thereby; and it is immaterial in such case that the shipper and the agent were both ignorant of the published rate." The authorities are fully reviewed in that case and need not be again restated, nor the reasons for the doctrine there announced. That rule is recognized by the trial court and sought to be distinguished on the ground that the classification of different items of freight

in the same carload rate was a matter about which the shipper was not bound to take notice and that, therefore, he could hold the company to the carload rate represented to him by the carrier. We do not think that distinction is a sound one. In the Wolf case we quoted with approval the following statement of the law found in a recent work on this subject:

"It is, of course, the duty of carriers' agents to furnish correct information as to the proper application of the lawfully established rates. However, the law requires that tariffs shall be open to public inspection, and therefore shippers are themselves charged with notice of the rate lawfully applicable." Barnes on Interstate Transportation, § 446.

It is clear, therefore, from that statement of the law that there is no distinction between notice of established rates and the application of such rates, and it is the duty of the shipper as well as of the carrier's agent to take notice of both. It will not do to say that a discrimination can not be allowed to stand on account of the misrepresentation of the carrier's agent as to the rate established, and then to allow discrimination by reason of a misapplication of the rate to the different classifications of freight. The shipper is bound to take notice of the one as much as of the other, and if a mistake results in either respect the carrier, not only has the right but is compelled by law to correct it and exact of the shipper, before delivery of the goods, an amount necessary to cover the full charge according to the schedule of rates and classifications approved by the Interstate Commerce Commission. Any other view would allow the discrimination which the statutes of the United States expressly forbid.

It is contended by learned counsel for appellees that the testimony shows that the stuff was shipped under an emigrant rate. This contention is based upon a statement found in the testimony of one of the appellees that it was an "emigrant car, and the family was moving." There is no testimony that a special rate was made on account of it being an emigrant's outfit, and the case was

not disposed of on that theory. The court based its judgment entirely upon its conception of the law, as before stated, that the shipper was not bound to take knowledge of an improper classification or combination of different kinds of freight so as to make up a carload lot. Moreover, the testimony does show that there is no classification or combination which would allow the different classes of freight to be shipped together under one carload rate.

The necessary conclusion, from the undisputed testimony, is that the court was wrong in its decision and that the judgment must be reversed. It is ordered, therefore, that the judgment be reversed and the cause remanded with directions to enter judgment in favor of appellant by way of damages for wrongful taking of the property, against appellees and the sureties on their bond for the sum of $95.80, the amount due as additional freight charges.