BRYANT LUMBER COMPANY *v.* FOURCHE RIVER LUMBER COMPANY.

Opinion delivered May 29, 1916.

1.    RAILROADS — INCORPORATION — POWERS OF STATE BOARD OF RAILROAD INCORPORATION.—Kirby's Digest, §§ 6545-6546, confers upon the State Board of Railroad Incorporation plenary powers and ab-

solute discretion in the matter of incorporating and granting charters to railroads.

2. CONTRACTS—CONSIDERATION—VALIDITY—ASSISTANCE IN PROCURING CORPORATE FRANCHISE.—A contract between the B. company and the F. company, whereby the former was to assist the latter in procuring a charter for a certain railroad, *held* invalid as against public policy.

3. CONTRACTS—VOID PROVISIONS—INVALIDITY OF ENTIRE INSTRUMENT.—The B. company agreed to assist the F. company in procuring a railway franchise, the contract containing other provisions also; *held*, that portion of the contract which was void as against public policy, rendered the whole agreement void.

4. CONTRACTS—FREIGHT RATES.—A contract whereby appellant agreed to assist appellee in procuring a franchise for a certain railroad, and appellee agreed to haul freight for appellant at a certain agreed rate, or at a rate to be fixed by arbitration, is void.

5. RAILROADS—RIGHT-OF-WAY—PURCHASE—DISCRIMINATORY FREIGHT RATES. —A contract whereby appellee acquired a right-of-way over appellant's land in consideration of reduced freight charges to appellant, is void.

6. CONTRACTS—ILLEGAL PROVISIONS—INVALIDITY OF WHOLE.—Where a part of the consideration for a contract is illegal, and the illegal portion is not separable from the whole consideration, then the whole instrument is void.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk*, Judge; affirmed.

STATEMENT BY THE COURT.

Appellant and appellee are lumber corporations organized under the laws of the State of Arkansas. Appellant had its principal place of business at Fourche, and the appellee its principal place of business at Bigelow, in Perry County.

Appellant instituted this suit against the appellee in the Perry Circuit Court to recover damages growing out of an alleged violation by the appellee of a written contract between appellant and appellee entered into on the 3d day of August, 1905. The complaint is based on the contract, and the contract is set out in full and made an exhibit to the complaint.

The appellant alleged substantially that it owned a saw mill plant and was engaged in the manufacture of

lumber at Fourche, Arkansas; that it owned large bodies of timbered lands that were situated several miles from its plant; that the removal of the timber from these lands to the mill of appellant was necessary in the operation of its business; that the appellee desired to build a railroad running through the timbered lands owned by appellant and entered into a contract with appellant whereby it was agreed that the appellant should convey a right-of-way over its lands to the appellee, and in consideration therefor the appellee was to build and have built a railroad over this right-of-way. It was alleged that the railroad was to be built thirty-four miles from a point ten miles south of Bigelow; that certain specified distances were to be completed within specified times and the whole to be completed by August 3, 1910. Appellant also alleged that by the terms of the contract appellee was to haul and carry all timber equally and impartially for the appellant over its railroad when constructed; that the appellee changed the route of the railroad and ran the same into timbered lands which were owned solely by the appellee, and that by the failure of the appellee to construct the road as required by the contract and to have the timber of appellant carried on equal terms with that of the appellee, appellant was damaged.

The complaint alleged that appellant had complied with all the terms and provisions of the written contract on its part, and alleged that the appellee had violated the contract in the particulars above mentioned, which were set forth in detail, together with the various amounts constituting the damages claimed by appellant, which, in the aggregate, were alleged to be over four hundred thousand dollars, for which the appellant prayed judgment.

The appellee demurred to the complaint, setting up that the obligations on the part of the appellee were based upon reciprocal obligations of the appellant which constituted an entire consideration; that by the terms of the contract appellant had obligated itself to join with the

incorporators of the Fourche River Valley & Indian Territory Railroad Co., in their efforts to secure a charter in accordance with the articles of association and map presented to the board of railroad incorporation; that in consideration of the obligations on the part of the appellant, as set up in the contract, the appellee had agreed on its part that the railroad company, when it was incorporated and its road built, would haul the timber then owned by the appellant at a rate specified, and that the price for hauling timber acquired in the future should be fixed by a board of arbitrators.

The appellee set up that the contract, in the particulars named, was contrary to public policy and in violation of the acts of Congress and of the State of Arkansas regulating the conduct of business of railroad companies.

It is unnecessary to set out the complaint and the contract at length. Both parties have treated the contract as a part of the complaint, and such portions of the contract as may be necessary will be set out and commented on in the opinion. The above are substantially the issues. The court sustained the demurrer and entered a judgment dismissing appellant's cause, from which judgment this appeal has been duly prosecuted.

*W. M. Lewis, C. C. Reid,* and *Sam Frauenthal,* for appellant.

1. The contract is not against public policy. It was merely an agreement to convey the right-of-way. It does not suggest or contemplate any improper or sinister influence with the Board of Railroad Incorporation.   71 Ark. 189; 97 *Id.* 86; 75 *Id.* 89; 86 *Id.* 309; Kirby's Digest, § 6546; Acts 1907, p. 194.

2. It is not void because rates are fixed for hauling timber in violation of the requirement that uniform rates shall be fixed. Appellee was not a railroad company at the time. But if so, this provision was separable and could be stricken out and the remainder of the contract upheld.   230 U. S. 316; 25 Ark. 351; 64 *Id.*

398; 96 *Id.* 105; 26 L. R. A. (N. S.) 106; 94 Ark. 461; 9 Cyc. 569; 1 Page on Contracts, § 510; 7 A. & E. Enc. L. 95; 6 L. R. A. (N. S.) 547; 32 L. R. A. 494; 77 U. S. 395; 6 R. C. L. 815, § 119.

*J. F. Sellers* and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellee.

The contract is void as against public policy. It violates sections 6802 to 6805 of Kirby's Digest. See, also, *Ib.,* § 6813, 6546; 230 U. S. 316; 9 Cyc. 481; 54 Am. Rep. 9; 23 N. J. L. 352, 357; 45 N. E. 507, 509; 13 Am. Rep. 353; 11 Atl. 264; 26 *Id.* 981; 93 N. W. 72; 110 *Id.* 106; 2 Wall. 45; 27 Am. St. 274; 65 Pac. 263; 61 Am. Dec. 347; 20 S. E. 733; 32 Am. Dec. (7 Watts, Pa.) 753; 82 Pac. 810; 74 N. E. 469; 14 Hun (N. Y.) 392; 63 Cent. Law, J. 41; 13 So. 107; 118 S. W. 849; 35 Am. St. 801; 130 *Id.* 754; 17 Am. Dec. 479; 6 R. C. L. 713, 730, 741; 16 So. 516; 67 Ill. 256; 108 Ark. 171; 63 *Id.* 318; 51 *Id.* 26, 32; 71 *Id.* 552; 106 *Id.* 239; 219 U. S. 467, etc.

2. If void, the whole contract is tainted—every provision is unenforceable. 65 Pac. 263; 25 Ark. 352; 46 *Id.* 420; 95 *Id.* 552; 108 *Id.* 180; 64 *Id.* 398, 405; 102 *Id.* 568, 572; 103 *Id.* 611; 209 U. S. 56; 219 *Id.* 478.

WOOD, J., (after stating the facts). It appears by the preamble to the contract under review that the appellee had already constructed a railroad across lands belonging to the appellant, and that there was a controversy between appellee and appellant as to whether or not the appellee had any authority to build this railroad, and it was recited that the controversy between the parties was detrimental to the interests of each other, and that in order to settle the same in so far as it affected *the future rights of any and all the parties and their successors as to the building, maintaining and operating a railroad, and the granting of rights-of-way, hauling freight,* etc., the parties had agreed to settle said controversy by entering into mutual covenants and agreements. The preamble shows, in other words, that

the covenants and agreements entered into by one of the parties were in consideration of the covenants and agreements entered into by the other.

Under this contract the appellee bound itself to haul the timber then owned by the appellant, when loaded by it on the cars of the appellee, at the rate of 37½ cents per thousand feet, and also to haul timber thereafter acquired by the appellant, when loaded on the cars of the appellee, at a price to be fixed by arbitration, and to haul after-acquired timber of the appellant for a period of ten years to points on the lines of the Fourche River Valley & Indian Territory Railroad Company, or to the end of its line, if consigned to points beyond it, without transfer of freight from one car to another.

The appellee also bound itself to cause the incorporators of the Fourche River Valley & Indian Territory Railroad Company, to renew its application for a charter, and if a charter was granted, it guaranteed that certain parts of the railroad should be completed within certain specified dates on a definite line specified, and that the whole should be completed within five years from the date of the charter.

In consideration of these obligations on the part of the appellee, the appellant bound itself *"to join with the incorporators of the Fourche River Valley & Indian Territory Railroad Company in their effort to secure a charter,"* for that company in accordance with the articles of association and map that had been presented to the board, and which were then on file in the office of Secretary of State. It also bound itself to allow the appellee to enjoy the right-of-way occupied by it over the lands of the appellant, and to execute a deed for the right-of-way over the lands of appellant to the Fourche River Valley & Indian Territory Railroad Company as soon as that company was incorporated.

The contract contained also the following provision:

"No application shall be made to the board of railroad incorporators for the incorporation of the Fourche

River Valley & Indian Territory Railroad Company until this contract is ratified by the respective boards of directors of the Bryant Company and the Fourche Company as above provided for. * * * This contract shall be void unless the charter of the Fourche River Valley & Indian Territory Railroad Company shall be granted by the board of railroad commissioners within sixty days from this date."

By these and other provisions of the contract it appears that appellee and appellant entered into the contract in order that the appellee, under the name of the Fourche River Valley & Indian Territory Railroad Company, might incorporate, build and operate a line of railroad in accordance with certain articles of incorporation, and a map then on file in the office of the Secretary of State, and to enable the appellant to have the timber on the lands it then owned hauled over appellee's railroad at a specified rate fixed by the parties to the contract, and to have the timber that it might thereafter acquire hauled at a price not specified, but to be fixed by arbitration.

(1) Under our law charters to railroads are granted by a State Board of Railroad Incorporation composed of certain State officers. It is made the duty of this board, "whenever any articles for the incorporation of any railroad company have been filed with the Secretary of State, together with a preliminary survey of the route to be occupied and appropriated by said company, and the affidavits of the directors, at the request of said directors, to meet at the office of the Secretary of State for the purpose of determining whether or not it may be to the interest of the public, and whether such charter should be granted."

"Said board shall hear and determine the matters in interest as between the public and said company, and as to whether there may be any interferences in the territory to be occupied and appropriated by the said company. Said board shall have power, and it shall be its duty to investigate, and if, in the opinion of the majority of the board, it is to the interest of the public that said company

should be invested with corporate powers, the president and secretary shall indorse their approval and thereupon said company shall become incorporated and chartered." Kirby's Digest, sections 6545, 6546.

It will be observed that this statute confers upon the board plenary power and absolute discretion in the matter of incorporating and granting charters to railroads. It is made the duty of this board, in the interest of the public, to investigate, and it is expressly provided that it shall determine the matters in interest as between the public and the company and as to whether there may be any interferences in the territory to be occupied and appropriated by the company. In hearing and determining the matters in interest between the public and the company seeking a charter, the board exercises *quasi*-judicial functions. These functions must be exercised in the interest of the public. Hence, the question as to whether a charter shall be granted or refused a particular company applying therefor can not be made the subject of a contract between that company and some other company.

(2)   Sound public policy forbids that the fountain source from which charters to railroads must emanate shall be subjected to contaminating influences. The necessary tendency and effect of contracts between individuals or companies by which one of the parties to the contract, for a money consideration or its equivalent, agrees that he will use his influence to aid the other party in procuring a charter is to bring to bear upon the board of railroad incorporation a corrupting influence. A contract of this kind is of no greater validity than would be a contract between parties by which one agreed, for a money consideration, or upon mutual covenants requiring the expenditure of money, to assist the other in obtaining a decision in his favor on an issue that might be pending between him and some other before a judicial tribunal, and is of no more validity than would be a contract by which one party agreed, for a money consideration, to assist another in procuring advantageous legislation. All

such contracts are absolutely void. Courts will not inquire as to whether the board in the particular instance under consideration was incorruptible, or whether the contract had any effect in fact on the conduct of the public officials. Such contracts will be judged by their tendency, and not by the actual results in any given case.

As was aptly said in *Doane* v. *Chicago City Railway Co.,* 45 N. E. 507 (Ill.) : · ''Contracts for the purchase of the influence of private persons upon the action of public officials, either executive or legislative, are against public policy, and void. It is sufficient that their tendency is bad.''

In 9 Cyc. 481, the authors, speaking of such agreements, said: ''The test is the evil tendency of the contract, and not its actual injury to the public in a particular instance.'' *Brooks* v. *Cooper,* 26 Atl. (N. J.) 978-981; 6 R. C. L. 730, 741; see, also, *Buchanan* v. *Farmer,* 122 Ark. 562.

While the contract under review does not disclose the precise nature of the service that the appellant was to render the appellee to enable it to procure the charter, yet the purpose in entering into the contract, as shown by the preamble and various provisions in the body of the contract, was to enable the appellee, under the name of the Fourche River Valley Railroad Company, to build a railroad according to a certain map, and the articles of association of that company then on file with the secretary of the board of railroad incorporation.

It is shown by the preamble that there was a controversy between the appellant and the appellee affecting *''the future rights of the parties as to the building, maintaining and operating a railroad.''*

If the appellant could have presented to the board of railroad incorporation any valid reasons why such board, acting in the interest of the public, should withhold a charter from the appellee, the board, charged with the duty of making an investigation to see whether appellee should be granted a charter, was entitled to know those reasons.

If appellant had any such valid objections as would cause the board to refuse appellee a charter, then in granting such charter the interests of the public would be injuriously affected. As a consideration to appellant for joining in the efforts of the appellee to procure a charter the latter was to perform certain covenants on its part. Thus virtually the effect of such a contract would be to enable the appellant and the appellee to convert conditions and influences that might be utilized by the board in the interest of the public for their own private gain. But, as we have seen, even though the public interest might not in fact be injuriously affected, the tendency of the contract into which such a covenant enters is bad, and unless the covenant which gives the taint can be eliminated, leaving legal and enforceable obligations, the whole contract will be declared void.

To sustain this contract, appellant relies upon certain decisions of this court in which we held that where a railroad obtained a deed to its right-of-way, upon consideration that it would locate a depot at a certain place that it would be liable in damages for a failure to comply with the contract. *Ark. Central Rd. Co.* v. *Smith,* 71 Ark. 189; *St. Louis & N. Ark. Rd. Co.* v. *Crandell,* 75 Ark 89; *St. Louis, I. M. & S. Ry. Co.* v. *Berry,* 86 Ark 309. But in these cases the issue now presented was not raised or decided, and the principle was not the same, or even analogous. Until the passage of Act 149, p. 356, Acts 1907, there was no public agency or tribunal in this State charged with the duty of locating depots. See *St. Louis, I. M. & S. Ry. Co.* v. *Bellamy,* 113 Ark. 384. That was left to the companies. Hence, in the above cases, influence to control the conduct of public functionaries was no part of the consideration for the contract. Appellant also relies upon *Fourche River Lbr. Co.* v. *Bryant Lumber Co.,* 97 Ark. 633, 634, as sustaining this contract. But that case likewise is not in point. The validity of the contract was not challenged in that case.

Learned counsel for appellant contend that the covenant on the part of appellant to join with the appellee in

its efforts to obtain a charter may be removed and leave the appellee to respond in damages for violations of its other covenants. "It is perfectly well settled that where one provision in a contract, which does not constitute its main or essential feature or purpose, is void for illegality, or otherwise, but is clearly separable and severable from the other parts which were relied upon, such other parts are not affected by the invalid provision, and may be enforced as though no such provision has been incorporated in the contract." 6 R. C. L. 815, sec. 214. *Fort Smith L. & T. Co.* v. *Kelley,* 94 Ark. 461.

(3) But this doctrine has no application here, for the reason that this tainted covenant on the part of the appellant to join appellee in its efforts to procure a charter, as appears from the preamble and various provisions of the contract, was an essential, if not the sole, inducement for the reciprocal covenants and obligations on the part of the appellee.

When the contract is viewed as a whole, it is clear that the appellee would not have entered into the separate covenants on its part if it had not realized that its efforts to obtain the charter sought might fail unless appellant joined in those efforts. And it is likewise clear that the appellant would not have entered into such a covenant unless the appellee had agreed on its part to do the things specified in its separate covenants. The tainted covenant therefore permeates and poisons the whole contract, rendering it illegal and void.

(4) There is another reason why the contract is against public policy and void. It is the policy of the laws of this State, as evidenced by constitutional provisions and statutory law, to prevent undue or unreasonable discriminations in freight charges and facilities for transportation. All individuals, associations and corporations have equal rights in these particulars, and there shall be no unjust or undue discrimination in these matters by common carriers in this State. Const. of Ark., art. 17, sections 3 and 6; Kirby's Digest, ch. 133, sections 6802 to 6805, inclusive.

To insure the public having business with common carriers as shippers of that fair and equal treatment in the matter of uniform rates of freight and in the other matters mentioned in the Constitution and statutes, railroads, as common carriers, are not only liable in damages to the party aggrieved, but there is a heavy penalty prescribed, to be recovered by a suit in the name of the State, for a violation of the statutory requirements providing for uniform rates of freight. See Kirby's Digest, sections 6808, 6813.

Even if the appellee and the Fourche River Valley & Indian Territory Railroad Company should be treated as independent corporations, the contract nevertheless entered into between the appellant and the appellee bound the appellee to have the Fourche River Valley & Indian Territory Railroad Company violate the provisions of the statute in regard to freight charges. In entering into this contract the appellant and the appellee, by their mutual covenants, assumed to usurp the functions of another one of the public agencies of the State, towit, the Railroad Commission, whose duty it is to fix the tariff charges for freight in this State. See Kirby's Dig., chap. 133, secs. 6802, 6803.

In 6 R. C. L. 713, it is said: "Contracts are against public policy when they tend * * * to the violation of a statute, or to interfere with or control executive, legislative or other official action, or to prevent competition whenever a statute or any other known rule of law requires it."

In *Heart* v. *Brewing Co.,* 130 Am. St. Rep. 754, the court said: "It is a principle of general application that all contracts are void which provide for doing a thing which is contrary to law, morality or public policy."

In the recent case of *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90, we held that in determining whether or not a contract was against public policy, courts will look to see whether any principles set forth in the Constitution and laws of the United States or of the State

in which the contract was executed, or the principles set forth in any of the decisions of their courts were violated; that these sources must be consulted in determining the issue as to whether a' contract is contrary to public policy. When these sources are consulted, the contract under consideration must be condemned.

In addition to this the contract in suit must fall under the condemnation of statutory law.

While the charter was to be granted in the name of the Fourche River Valley & Indian Territory Railroad Company, the language in the various provisions of the contract make it plain that the incorporators of that company were the stockholders and owners of the appellee. They are treated as identical in the complaint and in the contract between the parties to this litigation, and on the issue here presented the appellee must be regarded as the Fourche River Valley & Indian Territory Railroad Company. Appellee assumes throughout the contract to act for that company. The parties therefore to this contract, by their mutual covenants, violated the provisions of the statute requiring railway companies to transport freight at uniform tariff rates fixed by the Railroad Commission, and preventing them from demanding or receiving from any shipper any greater or less rate for similar and contemporaneous services than is demanded or received from any other shipper, etc. Kirby's Digest, sections 6802, 6803, 6804.

(5) But appellant contends that the covenant as to the rates is only incidental to the main purpose of the contract which was to have the timber transported; that this covenant as to rates, if illegal, should be ignored and damages awarded for alleged violations of the contract as set up in the complaint just as if the illegal provision as to the rates did not exist. The contention is unsound. It would have been legitimate for appellee and appellant to have entered into a contract whereby appellee obligated itself to pay for a right-of-way over appellant's lands by building a railroad on same and by transporting appel-

lant's timber at a schedule of rates fixed according to law. They could have contracted that the right-of-way should be paid for in money or in legitimate services, or both. But they could not contract that appellee should pay appellant for a right-of-way by making a preference in its favor in the matter of freight charges. *Chicago, R. I. & P. Ry. Co.* v. *Whedbee,* 106 Ark. 237-240; *St. Louis, I. M. & S. Ry. Co.* v. *Miller,* 103 Ark. 37, 42, 43; *St. Louis, I. M. & S. Ry. Co.* v. *Wolf,* 100 Ark 25; *Myar* v. *St. Louis S. W. Ry. Co.,* 71 Ark. 552; *N. Y., N. H. & H. R. Co.* v. *Int. State Com. Commission,* 200 U. S. 361, 391, 392; *Armour Packing Co.* v. *U. S.,* 209 U. S. 56, 72, 80; see, also, *Fourche River Lbr. Co.* v. *Bryant Lumber Co.,* 230 U. S. 316; *Adams Exp. Co.* v. *U. S.,* 212 U. S. 522, 523.

(6) Along with the covenants which would be legal and valid, if standing alone, the parties to this contract have included other covenants for illegal services to be performed by each. These covenants are so correlated to and dependent upon each other as to constitute one entire contract. As we said in *Ensign* v. *Coffelt,* 102 Ark. 568, 572: "Where the contract is entire and a part of the consideration thereof is illegal and the illegal portion is not separable from the whole consideration, then the whole contract is unenforceable." Such is this case.

Appellant, by reason of its ownership of the lands over which appellee desired to build, was able, it appears, to dominate the situation so far as procuring the charter was concerned. The obtaining of the charter was fundamental. It was an essential feature, because the road could not have been built without it. All the promises made by appellee therefore were necessarily conditioned upon securing the charter. Having its charter, appellee could have condemned appellant's right-of-way and built its road, notwithstanding any opposition of appellant. Then who can say that appellant would have consented to join appellee in its efforts to procure the charter without exacting in return the obligation of appellee to build the road and also to give appellant preferential rates; and

who can say that appellant did not also demand preferential treatment in regard to freight rates as an essential feature of the consideration for its covenant to join efforts in procuring the charter and granting appellee the right-of-way? The contract furnishes no basis for separation of the covenants and apportionment of the consideration. These are matters of contract between the parties, and the courts can not make contracts for them. This is not a suit for the value of the right-of-way. But appellant bottoms its action on the contract and prays damages for its breach. It is necessary for appellant to prove the illegal contract, therefore, courts will not enforce it. *Wood* v. *Stewart*, 81 Ark. 41-48; *Peay* v. *Pulaski County*, 103 Ark. 611.

The judgment is therefore correct, and it is affirmed.

HART and KIRBY, JJ., dissenting.