Rick MARCUM, *et al. v.* Matt WENGERT, *et al.*

00-828                                                40 S.W.3d 230

Supreme Court of Arkansas
Opinion delivered March 8, 2001

*The Evans Law Firm, P.A.*, by: *Marshall Dale Evans* and *Robert D. Brandon*, for appellants.

*Conner & Winters, P.L.L.C.*, by: *John R. Elrod* and *Vicki Bronson*, for appellees.

JIM HANNAH, Justice. This case is here on a petition for review filed by Appellants Rick Marcum, individually and as President of Phi Kappa Tau Housing Corporation, Anthony Capo, individually and as Vice President of Phi Kappa Tau Housing Corporation, and Phi Kappa Tau Housing Corporation (PKT Housing Corporation).[1] The appellants appeal the trial court's determination

---

[1] This petition for review arises from the court of appeals' decision in *Marcum v. Wengert*, 70 Ark. App. 477, 20 S.W.3d 430 (2000), in which that court affirmed the trial court's denial of attorney's fees and denial of the appellees' motion for judgment as a matter of law. The court of appeals found that while the trial court erred in finding no prevailing parties, attorney's fees were not due petitioners/appellants as prevailing parties because their causes of action sounded in tort rather than contract, and the controlling statute and lease language did not provide for fees in tort claims. Furthermore, the court of appeals affirmed

that they were not the prevailing parties and denial of their request for attorney's fees and court costs. Appellees Matt Wengert, Paul Wengert, and Angie Wengert (collectively referred to as the Wengerts) cross-appeal arguing that the trial court erred in failing to grant their motion for judgment as a matter of law on the basis that Marcum lacked authority to prosecute the original claim for PKT Housing Corporation. We reverse and remand on appeal and affirm on the cross-appeal.

*Facts*

This case involves a landlord/tenant dispute. In the summer of 1994, the Fayetteville chapter of Phi Kappa Tau Fraternity, a national collegiate fraternal social organization, began looking for a fraternity house for its members. The national fraternity created Phi Kappa Tau Housing Corporation, a non-profit Arkansas corporation, to allow the fraternity to enter into a housing lease agreement for its members.

PKT Housing Corporation leased a house for a term of six months from the Wengerts for use as a fraternity house. The six-month lease agreement was signed on August 24, 1994, at a rate of $210 per occupant, but no less than $4,000 per month, commencing on August 26, 1994, and expiring on February 25, 1995. Angie and Matt Wengert signed the lease on their behalf, and Marcum signed it as president and Capo signed it as vice-president of PKT Housing Corporation. PKT Housing Corporation also made a $4,000 deposit as required by the lease.

Despite the commencement of the lease on August 26, 1994, the fraternity members were not be able to move into the residence until September 17, 1994, when the City of Fayetteville finally issued an occupancy permit to the Wengerts. As such, the members had to find temporary housing until September 17, 1994, although rent had already been paid for that time. A dispute existed about whether the Wengerts agreed to give the fraternity a credit for this lost time.

the trial court on appellees'/respondents' cross-appeal finding that the appellees/respondents waived any objection to Marcum's representation of PKT Housing Corporation by drawing them into the litigation by filing a counterclaim and third-party complaint against the appellants/petitioners, and by waiting until trial to raise the issue, thus making the objection untimely.

During the lease, the Wengerts and PKT Housing Corporation entered into a separate agreement whereby Angie Wengert would purchase furniture to furnish the common living areas on the first floor of the fraternity house, and PKT Housing Corporation would reimburse the Wengerts. Plaintiff's Exhibit 16 indicated that an estimated $10,500 was spent to furnish the common areas of the house. PKT Housing Corporation paid the Wengerts $10,500 for the furniture.

The fraternity occupied the house through the lease period, and continued to occupy the house under the lease terms on a month-to-month basis, but without a new lease agreement, after the expiration of the original lease term on February 26, 1995. Apparently, the parties remained in negotiations regarding the renewal of the lease for the fall 1995 school term.

After the spring school term ended in May 1995, most of the fraternity members left for the summer, although some remained in the house and continued to pay rent. All of the furnishings owned by PKT Housing Corporation remained in the house.

During the first week of August, 1995, Marcum and Capo met with Angie Wengert and the building contractor about renovations to the house, but the lease was not discussed. According to Marcum's testimony at trial, he and Capo were surprised when, several days later, they returned to the house to see if the kitchen repairs were proceeding, and they found a "For Lease" sign in the front yard and no work had been done to the kitchen. According to Marcum, Angie Wengert notified him that they would not be leasing the building to the fraternity again, but that the Wengerts were amenable to giving the fraternity some time to arrange to have the new furniture moved. Marcum testified that he began making arrangements to have the furniture moved, but several days later, Capo called Marcum and told him that Matt Wengert had given the fraternity fifteen minutes to remove the furniture from the premises or it would be considered "abandoned" and forfeited, and the furniture would become the property of the Wengerts pursuant to paragraph seventeen of the lease. The appellants did not remove the furniture from the house. The Wengerts refused to return the furniture or the deposits to PKT Housing Corporation.

After the dispute in August 1995, Marcum, who was still on the board of the PKT Housing Corporation, approached an attorney about the forfeiture of the furniture. Shortly thereafter, Marcum and Capo disassociated from PKT Housing Corporation and

the fraternity, but continued to pursue the legal action, arguably at the direction or with consent of the PKT Housing Corporation. There is no evidence in the record that indicates that the housing corporation did not want Marcum to pursue the legal action on behalf of the housing corporation against the Wengerts. On February 16, 1996, PKT Housing Corporation filed its complaint for replevin, claiming that the Wengerts converted its property and also for return of the security deposit. PKT Housing Corporation later amended its complaint, requesting $10,000 for the furniture, twice the amount of the security deposits, and for punitive damages in the amount of $100,000. PKT Housing Corporation also requested attorney's fees and costs.

The Wengerts timely answered the original and amended complaints, denying the allegations set forth therein and alleging that the personal property had been abandoned pursuant to the terms of the lease. They then counterclaimed against the National PKT Fraternity and PKT Housing Corporation and, in fact, named Marcum and Capo as the representatives of the PKT Housing Corporation in the counterclaim. The Wengerts also filed third-party complaints against Marcum and Capo individually. The Wengerts complained that PKT Housing Corporation breached the lease in several respects. The Wengerts also included Marcum and Capo individually in these claims as third-party defendants, and claimed from all three in excess of $40,000 in damages, as well as attorney's fees and costs for breach of the lease. Ultimately, the trial court allowed PKT National Fraternity to be dismissed from the case with prejudice in an order filed April 29, 1998.

The trial in this matter began on August 27, 1998. During Marcum's testimony, a motion for judgment as a matter of law was made by the Wengerts' attorney regarding whether Marcum had standing to pursue the original action by PKT Housing Corporation against the Wengerts. The Wengerts argued that Marcum did not have standing to sue on behalf of PKT Housing Corporation because from the time the lawsuit was filed by PKT Housing Corporation until the time of trial, Marcum was neither a member of the board of the PKT Housing Corporation nor was he involved with the fraternity anymore. The trial judge denied the motion to dismiss the action, finding that only the corporation's shareholders and members had standing to challenge any action taken by Marcum on behalf of the PKT Housing Corporation.

The matter was submitted to the jury on eight interrogatories. The jury found that in the lawsuit by PKT Housing Corporation

against the Wengerts, the Wengerts were liable to PKT Housing Corporation in the amount of $8,500 for the tort of conversion of the furniture property and $4,000 for breach of the lease agreement. In the Wengerts' third-party complaints against Marcum and Capo individually, the jury found in favor of third-party defendants Marcum and Capo, and determined that they were not liable for any of the alleged $40,000 in damages. In the Wengerts' counterclaim against PKT Housing Corporation, the jury found that the fraternity was liable to the Wengerts for $2,000 in damages. The trial court entered these interrogatories as a judgment on November 10, 1998, and then issued a letter opinion regarding the supplemental issue of attorney's fees filed by the parties. In this letter, the trial judge found that none of the parties were "prevailing parties" as required to recover under either the applicable attorney's fees statute or under the lease agreement, which included a term providing for attorney's fees and costs for an action on the contract.

PKT Housing Corporation, Marcum, and Capo appealed the trial court's denial of attorney's fees and costs. The Wengerts cross-appealed on the trial court's denial of their motion for judgment as a matter of law.

*Standard of Review*

When we grant a petition to review a case decided by the court of appeals, we review all of the issues raised in the court below as if they were originally filed in this court. *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998); *Williams v. State*, 328 Ark. 487, 944 S.W.2d 822 (1997). A trial court is not required to award attorney's fees and, because of the trial judge's intimate acquaintance with the trial proceedings and the quality of service rendered by the prevailing party's counsel, we usually recognize the superior perspective of the trial judge in determining whether to award attorney's fees. *Jones v. Abraham*, 341 Ark. 66, 15 S.W.3d 310 (2000); *Chrisco v. Sun Industries Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the trial court abused its discretion. *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998); *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993). A grant of attorney's fees is an issue within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Id.*

## I. Attorney's Fees

The first issue for the court to determine is whether the trial court erred in denying attorney's fees to Marcum, Capo, and PKT Housing Corporation. As part of this determination, this court must consider whether the trial court erred in deciding there were no "prevailing parties" in this lawsuit, and if error occurred, whether attorney's fees should have been awarded either under Ark. Code Ann. § 16-22-308 (Repl. 1999) or under the terms of the lease agreement.

### A. Prevailing Party

The threshold issue is whether the trial court erred in determining that no one was a "prevailing party" in this case. After the jury returned its verdict by interrogatories on August 29, 1998, the trial judge in a letter dated November 9, 1998, addressed in part the remaining issue of attorney's fees and determined that fees were not due Marcum, Capo, and PKT Housing Corporation because neither they nor the Wengerts were the "prevailing party" in the action. The trial court stated:

> Plaintiff maintains it is entitled to recover an attorney's fee under either the provisions of A.C.A. § 16-22-308 or the terms of the parties' lease agreement providing for same.
>
> Under either theory of recovery, a party seeking entitlement to a fee must be the prevailing party. Here, Plaintiff received more money under the jury's verdict than Defendants, and as Plaintiff argues, could be considered the prevailing party. However, Plaintiff, in its amended complaint, sought at least $110,000 in damages, recovered $8,500 on its conversion theory and $2,000 on its breach of contract claim, thus hardly prevailing on its original claim.
>
> On the other hand, Defendants claimed damage in excess of $40,000 in their counterclaim and obtained a net verdict of $2,000 — a far cry from their sought after recovery, but nonetheless a recovery.
>
> Plaintiff seeks an attorney's fee and costs amounting to $54,432.69 and Defendants maintain they have expended in excess of $20,000 defending Plaintiff's claims and prosecuting their counterclaim. This case involves claims by Plaintiff for conversion and breach of

contract and counterclaim by Defendants for breach of contract. This is a simple case, neither complicated by facts nor esoteric questions of law. It is exceedingly difficult to imagine why, in a case of this nature, a litigant would authorize the expenditure of sums anywhere near those now claimed by Plaintiff, or for that matter, paid by the Defendants.

Prevail is defined as being victorious. See *Webster's*, 1989 ed. Certainly neither Plaintiff nor Defendants have been victorious. In my judgment, neither party, as a matter of law, prevailed in this action and accordingly, no fees or costs will be awarded.

Clearly, the trial judge decided that no party was the "prevailing party" because they did not recover anywhere close to the amount of damages they were seeking. However, the trial court erred in basing his determination of who prevailed on the amount each party recovered under their claims. Instead, under Arkansas law, the prevailing party is determined by who comes out "on top" at the end of the case. This court provided the most recent discussion of the term "prevailing party" in *Burnette v. Perkins & Associates*, 343 Ark. 237, 33 S.W.3d 145 (2000), with regard to its application under Ark. Code Ann. § 16-22-308. While the issue in *Burnette* was whether there is a prevailing party in a case that is dismissed without prejudice before reaching the merits, the language regarding the term "prevailing party" is useful. The *Burnette* court determined that in order to be a "prevailing party," one must prevail on the merits of the lawsuit.

██ ██ The *Burnette* court further cited to *Gill v. Transcription, Inc.*, 319 Ark. 485, 982 S.W.2d 258 (1995), which referred to *ERC Mortgage Group, Inc. v. Luper*, 32 Ark. App. 19, 795 S.W.2d 362 (1990), in which this court and the court of appeals also discussed "prevailing party." In *Gill*, this court quoted *Luper*, adopting the court of appeal's reasoning on that issue. The *Gill* court stated:

> In *Luper*, the Court of Appeals held that the plaintiff was the prevailing party under the statute, although six of the seven counts in his complaint were dismissed at the close of his case-in-chief. The court quoted with approval from a Missouri case:
>
> > [t]here can be but one prevailing party in an action at law for the recovery of a money judgment. It transpires frequently that in the verdict each party wins on some of the issues and as to such issues he prevails, but the party in whose favor the verdict compels a judgment is the prevailing party. Each side

may score but the one with the most points at the end of the contest is the winner, and . . . is entitled to recover his costs.

32 Ark. App. at 19, 795 S.W.2d at 364, 365, quoting *Ozias v. Haley*, 125 S.W. 556, 557 (Mo. App. 1910).

*Gill*, 319 Ark. at 489–490. Using this language, this court must analyze each cause of action and subsequent award by the jury to determine who was the prevailing party in the case. In this case, there were actually four different claims: PKT Housing Corporation made a claim against the Wengerts for conversion of furniture property, breach of the lease contract, and for forfeiture of their deposits. The Wengerts counterclaimed against PKT Housing Corporation for breach of the lease contract and damages to the property. The Wengerts also complained against Marcum and Capo individually for the breach of the lease contract and damages to the property. According to the jury's verdict by interrogatories, it found that PKT Housing Corporation prevailed over the Wengerts on its claims for conversion and for breach of the lease in the amounts of $8,500 and $4,000 respectively. The jury then found that Marcum and Capo in their individual capacities prevailed in defending the third-party claims against them by the Wengerts. Finally, the jury found that the Wengerts were entitled to recover $2,000 in their counterclaim for damages against PKT Housing Corporation. As such, it is clear that Marcum and Capo, individually, were the prevailing parties in the actions against them filed by the Wengerts, and that PKT Housing Corporation bested the Wengerts in claims for damages under the lease agreement. As such, according to our case law, PKT Housing Corporation, Marcum, and Capo, were the prevailing parties in their respective lawsuits with the Wengerts. Therefore, the trial court's decision that there was not a prevailing party is error.

### B. Attorney's Fees under Ark. Code Ann. § 16-22-308

Because Marcum, Capo, and PKT Housing Corporation were the "prevailing parties" in this lawsuit, the court must next consider whether fees should have been awarded under the statute. Inherent in this consideration is whether the respective claims sounded in tort or in contract to determine the applicability of the attorney's fee statute. The decision of whether to award attorneys' fees in a contract case is governed by Ark. Code Ann. § 16-22-308, which provides in pertinent part:

> In any civil action to recover on . . . breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney fee to be assessed by the court and collected as costs.

In determining whether PKT Housing Corporation can be awarded attorney's fees under the statute, the trial court must decide whether the case sounded in tort or contract. Marco and Capo prevailed in defending the third-party complaints against them by the Wengerts. The Wengerts' third-party complaints against Marcum and Capo were for breach of lease, a contract matter subject to the attorney's fee provision under Ark. Code Ann. § 16-22-308.

██ █ In awarding fees under Ark. Code Ann. § 16-22-308, the trial court has broad discretion on whether to award fees, and his decision will not be reversed absent an abuse of discretion. *Burnette, supra; Gill, supra.* The operative word in this statute is "may." The word "may" is usually employed as implying permissive or discretional, rather than mandatory, action or conduct and is construed in a permissive sense unless necessary to give effect to an intent to which it is used. *Jones, supra; Chrisco, supra.* Here, the trial court never actually exercised its discretion because it failed to find that any party was the prevailing party in this lawsuit. Here the case should be reversed and remanded for the trial judge to consider awarding reasonable attorney's fees to PKT Housing Coporation and to Marcum and Capo under Ark. Code Ann. § 16-22-308 and costs pursuant to Rule 54(d) of the Arkansas Rules of Civil Procedure.

### C. Attorney's Fees under the lease agreement

██ Even if attorney's fees could not be awarded to PKT Housing Corporation under Ark. Code Ann. § 16-22-308 due to the inclusion of the tort claim in the award, attorney's fees can still be due under the language of the lease agreement. In *Griffen v. First National Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994), the supreme court held that where the parties entered into a written contract that specifically provides for the payment of attorney's fees incurred in the enforcement of the contract, the agreement is enforceable according to its terms, independent of the statutory authorization set forth in Ark. Code Ann. § 16-22-308. The lease agreement in this case contained a provision for the payment of attorney's fees

and costs in the event an action was instituted to enforce the lease. The language of the clause stated:

> 16. ATTORNEY'S FEES: In the case suit should be brought for recovery of the premises, or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.

Clearly, this language is very broad, and provides that the "prevailing party" would recover reasonable attorney's fees and costs. Furthermore, this lease term does not limit the recovery of attorney's fees to a contract matter alone, but provides instead for recovery for any action arising from the lease or from the occupation or control of the premises.

■■ In addition, this lease term includes the term "shall" when discussing entitlement to attorney's fees and costs. This is quite different from the statutory entitlement to fees under Ark. Code Ann. 16-22-308, which leaves the award of fees to the discretion of the trial court. This lease term, however, appears to anticipate that the award of fees and costs "shall" be mandatory. When interpreting statutory language, for example, this court has found that the word "shall" in the statute indicates mandatory compliance with the statute's terms unless compliance would result in an absurdity. *See, e.g., Ramirez v. White County Circuit Court*, 343 Ark. 372, 38 S.W.3d 298 (2001). Furthermore, the words of a contract are to be taken and understood in their plain meaning. *First Nat. Bank of Crossett v. Griffin*, 310 Ark. 164, 832 S.W.2d 816 (1992), *cert. denied*, 507 U.S. 919 (1993), *appeal after remand*, 318 Ark. 848, 888 S.W.2d 306 (1994); *Farm Bureau Mut. Ins. Co. of Arkansas, Inc. v. Milburn*, 269 Ark. 384, 601 S.W.2d 841 (1980). It appears here that the word "shall" in the attorney's fee section of the lease agreement required a finding by the trial court of the prevailing party in the action and then required a mandatory award of reasonable attorney's fees and costs to that party.

■■ Marcum and Capo were not parties to the lease agreement, and they are not entitled to attorney's fees and costs under the lease agreement. Again, the trial judge never exercised his discretion because he failed to find that any party was the prevailing party to this lawsuit. Here, the case should be reversed and remanded for the trial judge to award reasonable attorney's fees and

costs to PKT Housing Corporation pursuant to the lease agreement.

## II. Marcum's Standing to Sue on Behalf of PKT

For their cross-appeal, the Wengerts assert that the trial court erred in denying the Wengerts' motion for judgment as a matter of law on the issue of whether Marcum could prosecute the original lawsuit on behalf of PKT Housing Corporation. During trial, the Wengerts made the motion for judgment as a matter of law, arguing that because Marcum was no longer a member of the board of directors of the PKT Housing Corporation or associated with the fraternity at the time of the filing of the lawsuit, he did not have "standing" to represent PKT Housing Corporation in its initial lawsuit against the Wengerts. The trial judge denied the motion finding that only PKT Housing Corporation, its board of directors, or its members/shareholders had the authority to challenge Marcum's representation of the housing corporation in the lawsuit.

The evidence supports the finding that Marcum continued to act with the permission of the board of directors in pursuing this claim. Under Arkansas law, a corporation has the power to sue and be sued in its corporate name. Ark. Code Ann. § 4-26-204(a)(2) (Repl. 1991); *Calandro v. Parkerson,* 327 Ark. 131, 936 S.W.2d 755 (1997). A corporation is a legal entity which, being distinct from its members, "owns the corporate property and owes the corporate debts, is the creditor to sue or the debtor to be sued, has perpetual existence, and can act only through its duly constituted organs, primarily its board of directors." *Calandro,* 327 Ark. at 136-137 (quoting *Arkansas Iron & Metal Co. v. First Nat'l Bank of Rogers,* 16 Ark. App. 245, 251, 701 S.W.2d 380, 383 (1985)). Generally, the officers and members of a corporation may not sue or be sued in their own name. *See* 19 C.J.S. *Corporations* § 711, at 364 (1990). A corporate officer has no individual right of action against a third party for alleged wrongs inflicted on the corporation, even if the officer is the sole shareholder. *Id.* § 629, at 277.

Arkansas Code Annotated § 4-26-801(a) (Repl. 1991) states:

> (a) All corporate powers shall be exercised by or under the authority of and the business and affairs of a corporation shall be

managed under the direction of its board of directors, subject to any limitation set forth in the articles of incorporation.

Here, the evidence at trial indicated that at the time Marcum contacted and contracted with the attorneys to look into filing suit for the housing corporation, Marcum was still on the board of directors. It was only after that time that he and Capo disassociated from the housing corporation and from the fraternity, but the evidence indicates that the attorneys had already been hired at the authority of the housing corporation. There is no indication that the housing corporation's continuing board of directors objected to the continuation of Marcum's representation of the housing corporation in the lawsuit. In fact, according to Marcum, the board of directors wanted the lawsuit continued. Certainly, there was no challenge to Marcum's standing to represent the housing corporation by any member of the housing corporation as required by Ark. Code Ann. § 4-26-205 (Repl. 1991) entitled "Defense of Ultra Vires." Under this statutory provision, the corporations acts are deemed valid even if the corporation lacked the capacity or power to perform the act. Under the statute, only specific people are able to challenge the corporation's acts, and the Wengerts do not occupy any of those positions. We affirm on cross-appeal.

We reverse and remand this case to the trial court with instructions to consider awarding reasonable attorney's fees and costs to Marcum and Capo and PKT Housing Coporation under Ark. Code Ann. § 16-22-308 and Rule 54(d) of the Arkansas Rules of Civil Procedure and to award reasonable attorney's fees and costs to PKT Housing Corporation under paragraph sixteen of the lease agreement.