2009 Ark. 111

**ASBURY AUTOMOTIVE USED CAR CENTER, Appellant,**

v.

**Patric BROSH, Mark Lunsford, Mel Anderson, NCAS, LLC, and New Century Autosales Corp., Appellees.**

No. 08–526.

Supreme Court of Arkansas.

March 5, 2009.

Warner, Smith & Harris, PLC, Fort Smith, by: G. Alan Wooten and Stephanie Harper Easterling, for appellant.

Conner & Winters, LLP, Fayetteville, by: John R. Elrod, Todd P. Lewis, and Kerri E. Kobbeman, for appellees.

ROBERT L. BROWN, Justice.

Appellant Asbury Automotive Used Car Center ("Asbury") appeals the order of the circuit court denying its motion for attorneys' fees and costs pursuant to Arkansas Code Annotated section 16–22–308. We agree with Asbury that the contracts do not control this issue and that fees and costs should be considered by the court under section 16–22–308. Accordingly, we reverse and remand for further proceedings.

The facts leading up to this matter are set out in the opinion following the first appeal of this case. *See Asbury Auto. Used Car Ctr., L.L.C. v. Brosh,* 364 Ark. 386, 220 S.W.3d 637 (2005) (*"Asbury I"*). In the mid–1990s, appellees Patric Brosh, Mark Lunsford, and Mel Anderson decided to start a business that would sell used cars from Wal–Mart parking lots. Brosh, Lunsford, and Anderson started a company, called New Century Auto Sales ("New Century"), another appellee to this action (together "Appellees"). Appellees next entered into a lease agreement with Wal–Mart to sell used cars on its parking lots. After developing a business plan, New Century decided to market the plan and approached Asbury about purchasing it. Asbury expressed interest, and the parties began a lengthy negotiation process. Ultimately, the parties signed the contracts that are the center of the instant dispute—the Purchase Agreement, whereby Asbury agreed to purchase the business plan from New Century and to enter into a new lease agreement with Wal–Mart, and three separate Employment Agreements, whereby Asbury agreed to employ Brosh, Lunsford, and Anderson respectively for an annual base salary of $300,000.

By August 2003, a dispute had arisen among the parties, and Asbury terminated its leases with Wal–Mart and also terminated the Employment Agreements with Brosh, Lunsford, and Anderson. This led to a suit by Appellees against Asbury in February 2004, in which they alleged that Asbury had breached the contracts. The Appellees sought over $23,000,000 in damages. Asbury answered and moved to stay the proceedings and to compel arbitration pursuant to arbitration provisions in the disputed contracts. The circuit court heard the matter and determined that the arbitration provisions lacked mutuality of obligation and, because of this, denied Asbury's motion. Asbury filed an interlocutory appeal, and this court affirmed the circuit court in *Asbury I.*

The case was then tried before a jury, which rendered a verdict in favor of Asbury. The jury specifically found that Asbury did not breach the Purchase Agreement or the Employment Agreements. After the verdict and entry of judgment, Asbury moved for attorneys' fees, pursuant to section 16–22–308, and requested $454,421.75 in attorneys' fees and $242.25 in costs against the Appellees jointly and severally. The Appellees responded that the disputed contracts contemplated that each party would bear its own expenses and that section 16–22–308 did not apply.

The circuit court agreed with the Appellees and entered an order denying Asbury's motion. The order specifically said that section 16–22–308 did not apply because "the parties intended and anticipated that in the event there was a controversy or dispute arising out of or relating to the Agreements, or any breach thereof, then each party would bear their own costs and attorneys' fees." The order also included a finding that "[f]or the purposes of the Defendant's Motion and Supplemental Motion for Attorneys' Fees and Costs, the Defendant (Asbury) would be entitled to recover a total of $364,275.50 in attorneys' fees against the Plaintiffs (Appellees) if Ark.Code Ann. § 16–22–[3]08 is applicable."

We first address the issue raised by Asbury on appeal that the circuit court erred in finding that section 16–22–308 does not apply and in denying attorneys' fees because of certain language in the contracts. This court follows the American Rule and has consistently held that a party is not entitled to attorneys' fees except as provided by statute. |4*See, e.g., Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006). Arkansas Code Annotated section 16–22–308 provides:

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, *unless otherwise provided by law or the contract which is the subject matter of the action*, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

Ark.Code Ann. § 16–22–308 (Repl.1999) (emphasis added).

This court has also said that a circuit court is not required to award attorneys' fees and, because of the judge's intimate acquaintance with the trial proceedings and the quality of the service rendered by the prevailing party's counsel, the circuit judge has a superior perspective to determine whether to award fees. *Marcum v. Wengert*, 344 Ark. 153, 160, 40 S.W.3d 230, 234–35 (2001). The decision to award attorneys' fees and the amount to award is discretionary and will be reversed only if the appellant can demonstrate that the circuit court abused its considerable discretion. *Id.*, 40 S.W.3d at 235.

At issue in the instant case is whether the disputed contracts provide for each party to pay its own attorneys' fees and costs following litigation so as to render section 16–22–308 inapplicable. The language of those contracts governs this issue. Paragraph 12 of the Purchase Agreement reads in pertinent part:

> *Alternative Dispute Resolution.* In the event of any controversy arising out of or relating to this Agreement or any breach thereof, the parties shall first use their |5diligent and good faith efforts to resolve the dispute by exchanging relevant information and negotiating in good faith. If such dispute resolution efforts are unsuccessful after 30 days, the parties to this Agreement agree to participate in non-binding mediation.... *Each party shall bear its own costs of mediation and shall share equally in the costs of the mediator.* If the mediation is unsuccessful after 45 days ... the dispute shall be submitted to binding arbitration.... *All arbitration fees for such arbitrators shall be divided equally between the parties....*

(Emphasis added.)

Paragraph 13(j) of the Purchase Agreement discusses severability and says:

In the event that any provision of this Agreement is determined to be partially or wholly invalid, illegal or unenforceable, then such provision shall be deemed to be modified or restricted to the extent necessary to make such provision valid, binding and enforceable or if such provision cannot be modified or restricted in a manner so as to make such provision valid, binding or enforceable, then such provision shall be deemed to be excised from this Agreement and the validity, binding effect and enforceability of the remaining provisions of this Agreement shall not be affected or impaired in any manner.

Paragraph 10 of the Employment Agreements reads:

*Settlement of Disputes.* Except as provided in Paragraph 9(d) above, any dispute regarding the interpretation of this Agreement or relating to the Executive's employment shall be resolved by binding arbitration.... *It is further agreed that each party shall bear their respective costs and expenses (including attorney's fees) incurred in any arbitration conducted pursuant to this Paragraph 10.*

(Emphasis added.)

The Employment Agreements also have a severability clause in paragraph 13(f), which reads:

The provisions of this Agreement are independent of and separable from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part.

Asbury urges that *Asbury I* rendered the arbitration provisions void, invalid, and unenforceable because the contracts lacked mutuality of obligation. Because of this, Asbury argues, the circuit court erred in relying on those portions of the arbitration provisions dealing with attorneys' fees and costs to deny its motion. The Appellees respond that the portions of paragraph 12 of the Purchase Agreement and paragraph 10 of the Employment Agreements dealing with fees and costs were not excised as a result of *Asbury I.* They assert instead that the severability clauses operate to save the terms calling for each party to bear its own fees and costs and that this language evidences the parties' intent to proceed similarly with respect to litigation fees and costs.

■ The Appellees are correct that "where one provision in a contract, which does not constitute its main or essential feature or purpose, is void for illegality, or otherwise, but is clearly separable and severable from the other parts which were relied upon," the contract is not affected by the invalid provision, and can be enforced as though the invalid provision had not been incorporated into the contract. *See, e.g., Bryant Lumber Co. v. Fourche River Lumber Co.,* 124 Ark. 313, 323, 187 S.W. 455, 458 (1916). As a result, valid provisions of the contract will remain unchanged if the invalid provision can be easily separated from them. *See Kell v. Bella Vista Vill. Prop. Owners Ass'n,* 258 Ark. 757, 765, 528 S.W.2d 651, 656 (1975).

■ It is also well settled that a contract should be construed so that all of its parts are in harmony, if that is possible. *See, e.g., Tyson Foods, Inc. v. Archer,* 356 Ark. 136, 144, 147 S.W.3d 681, 686 (2004). Taking the words in their ordinary and usual meaning, this court must not allow any substantive clause "to perish by construction, unless insurmountable obstacles stand in the way of any other course." *See North v. Philliber,* 269 Ark. 403, 407, 602 S.W.2d 643, 645 (1980) (citing *Fowler v.*

*Unionaid Life Ins. Co.*, 180 Ark. 140, 20 S.W.2d 611 (1929)).

As we read Appellees' arguments, which led to the circuit court's order, they contend that the cost- and fee-sharing portions of the arbitration provisions should remain in the contracts despite *Asbury I*, which voided the arbitration provisions. The Appellees' argument is difficult for this court to accept because all of the provisions in paragraph 12 of the Purchase Agreement and paragraph 10 of the Employment Agreements were included in the context of compelled arbitration. Without the language requiring the parties to engage in arbitration and mediation, any remaining provisions in the paragraphs lack real meaning, standing alone.

But, in addition, our decision must be governed by the clear language of the contracts. Irrespective of whether the fee- and cost-sharing portions of the Purchase ⌊8Agreement and Employment Agreements remain in effect, it is undisputed that no provision of either contract expressly contemplates the sharing of *litigation* fees and costs. Without such language in the contracts, Asbury argues that the circuit court erred in finding that the parties intended for each side to pay its own attorneys' fees and costs in the event of litigation. We agree.

In interpreting the meaning of a contract, the first rule of construction is to give to the language the meaning that the parties intended. *See, e.g., Coleman v. Regions Bank*, 364 Ark. 59, 65, 216 S.W.3d 569, 574 (2005). This is determined, in part, by looking to the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Id.* It is a well-settled rule that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *Id.*

Without question, the parties intended for each party to bear its own costs and attorneys' fees related to arbitration, and paragraph 12 of the Purchase Agreement and paragraph 10 of the Employment Agreements clearly state that. But to extrapolate from those paragraphs an intent to follow the same procedure for litigation costs and fees, when language in the contracts does not support this, goes far beyond the plain language of the contracts and what the parties intended.

⌊9We note, in addition, that the contracts included language that, notwithstanding the arbitration provisions, would have permitted Asbury to seek redress in court in the event the Appellees breached the provisions related to non-solicitation and non-competition and that neither contract included cost- or fee-sharing language in those provisions.[1] This further evidences the intent of the parties to have cost and fee sharing related only to arbitration and mediation. As the Appellees acknowledge in their brief on appeal, "[i]f the agreements had included a provision for attorneys' fees in the event of litigation the term would have directly conflicted with the mandatory arbitration provision." For Appellees to ask this court now to find that the parties intended to bear their own litigation-related costs and fees flies in the face of reason, particularly in light of Appellees' own admission that they intended only to enter a valid and binding contract with a mandatory arbitration clause.

In sum, given the plain language of the contract, taken as a whole, supported by the Appellees' own statements regarding the intent of the parties at the time the

---

1. It was these provisions that formed the basis for the finding that the arbitration provisions lacked mutuality of obligation in *Asbury I*.

280

contracts were signed, we hold that the circuit court erred in its expansive finding that "the parties intended and anticipated that in the event there was a controversy or dispute arising out of or relating to the Agreements, or any breach thereof, then each party would bear their own costs and attorneys' fees." We reverse on this point.

We turn next to the issue of whether a decision regarding appropriate attorneys' fees has been made by the circuit court. Asbury urges this court to reverse the circuit court's order and to direct it to grant the fees referenced in its order. In doing so, Asbury relies on the circuit court's order denying its motion for attorneys' fees, which included a finding that "[f]or the purposes of the Defendant's Motion and Supplemental Motion for Attorneys' Fees and Costs, the Defendant (Asbury) would be entitled to recover a total of $364,275.50 in attorneys' fees against the Plaintiffs (Appellees) if Ark.Code Ann. § 16–22–[3]08 is applicable." Thus, Asbury concludes that the circuit court has already determined that $364,275.50 were appropriate attorneys' fees to be awarded, if section 16–22–308 were found to apply.

Again, Arkansas Code Annotated section 16–22–308 provides that "the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs." Yet, as already stated, a circuit court is not required to award attorneys' fees. *See Marcum,* 344 Ark. at 160, 40 S.W.3d at 234–35.

Resolution of this issue turns on whether the circuit court actually made an alternative finding that $364,275.50 be awarded under section 16–22–308, if the court's order was reversed by this court. We conclude that this is not abundantly clear because of the context in which the court made its finding. The court couched its order on what attorneys' fees and costs Asbury "would be entitled to" *if the statute*

*applied.* But it then found that the statute did not apply. Though the court unquestionably performed some analysis of the relevant factors for awarding attorneys' fees and costs to a prevailing party, we conclude that it is ultimately unclear that the court exercised its full discretion and made an alternative ruling that would govern in the event this court held that section 16–22–308 applied.

For this reason, we reverse and remand for the circuit court to determine whether attorneys' fees and costs should be awarded Asbury as the prevailing party under section 16–22–308 and if so, the amount of those fees and costs.

Reversed and remanded.